GRINFILL B. HOLDEN vs. ABRAHAM GREVE.

July 2, 1889.

**Appearance by Attorney held Authorized.**—Evidence considered sufficient to support a finding that an appearance in an action, by attorneys in behalf of the defendant, was authorized by him, so that he was thereby subjected to the jurisdiction of the court.

Appeal by defendant from an order of the district court for Ramsey county, *Kelly*, J., presiding, refusing a new trial after verdict of $2,953.42 for plaintiff. The remarks of counsel, excepted to by defendant and referred to in the opinion, were to the effect that since the rendition of the judgment sued on the defendant has carefully kept himself and his property out of reach; that defendant has prospered in the general prosperity of this state, and the plaintiff began to think it was about time for the judgment to be paid, and so sued on it here, where defendant lives and his property can be reached; and that by statute in this state, and presumably by like statute in Wisconsin, a defendant, on cause shown within a year after entry of judgment, may have the judgment opened and be allowed to make any proper defence he may have.

*H. L. Williams*, for appellant.

*Flandrau, Squires & Cutcheon*, for respondent.

DICKINSON, J. This action is upon a judgment recovered in favor of this plaintiff, and against this defendant, in the circuit court of the state of Wisconsin, in the year 1877. Jurisdiction in that action

was acquired, if at all, only through an appearance therein in behalf of the defendant by Tyler & Dickenson, attorneys of that court. The question presented upon this appeal is whether the evidence in this case is sufficient to sustain the finding that the defendant had authorized such appearance. There was evidence in this case tending to show the following facts: The plaintiff and defendant had been in partnership at Sparta, Wisconsin. Their partnership relations terminated with some business matters unsettled, and which became a subject of controversy between them. The plaintiff employed the services of an attorney-at-law, one Bleckman, who in the plaintiff's behalf negotiated with the defendant upon the subject. The latter finally referred Bleckman to Tyler & Dickenson, saying: "They are my attorneys, and will act for me in this matter." Bleckman then went to Tyler, who said he would see the defendant, and then talk with him, Bleckman. Bleckman and Tyler had subsequent negotiations upon the subject, but Tyler finally informed Bleckman that the matter would have to be settled in court; that he, Bleckman, would have to bring an action. An action was instituted, but before that the defendant came to reside at St. Paul, in this state, where he has since resided. A copy of the summons and complaint were mailed to him, directed to his place of residence here. The testimony shows that the action was probably commenced in February, 1876. When the summons and complaint were thus sent to the defendant is not more particularly shown. April 10, 1876, the defendant wrote to one Oppenheim, at Sparta, who was connected by family ties with the defendant and with whom he had been engaged in partnership. In this letter, after referring to a matter with which one Lettson seems to have been connected, the defendant said: "I wish you would go and see Tyler & Dickenson about it, and let me know by return mail what is done in the cases of Lettson and Holden. I have paid Tyler & Dickenson cost and fees. I have money to pay all my indebtedness, and will gladly do it, but will not pay anything but honest debts. Please attend to it. * * *" April 12th he wrote again to Oppenheim, requesting him to see Tyler & Dickenson concerning the Lettson matter, and adding: "In regard to the Holden matter, I wish you would let me know what they done about it." Oppenheim gave these

letters to Tyler & Dickenson, asking them to attend to the subject referred to. They then served notice of their appearance in the action in behalf of the defendant. They subsequently withdrew their appearance without having interposed any defence. Tyler has since died. They made a charge of $25 for their retainer in the action, which was paid by the hands of Oppenheim. It is fairly to be inferred from the defendant's testimony that he has for several years been aware of the entry of the judgment, but it does not appear that he has ever sought to have it set aside for want of jurisdiction. There are many direct contradictions in the testimony to which we do not now refer, as we deem them to have been settled by the verdict of the jury. Nor have we set forth important evidence going to oppose the claim that Tyler & Dickenson were unauthorized by the defendant to enter his appearance in the action. We have only referred to the evidence which, as we consider, was sufficient to justify the jury in finding that they were so authorized. We do not regard the evidence upon which this conclusion rests as being of the most satisfactory nature to establish the fact of jurisdiction having been acquired over one upon whom the process of the court was never personally served. But the issue was one of fact for the jury, and the decision must depend to a considerable extent upon the credibility of witnesses, and we do not think that the verdict, supported by the action of the trial court, should now be set aside.

There was no error in receiving evidence that the defendant referred the plaintiff's attorney to Tyler & Dickenson, nor in the remarks of plaintiff's counsel to the jury do we find cause for disturbing the verdict.

Order affirmed.